[Cite as *Jenkins v. Jenkins*, 2012-Ohio-4182.]

IN THE COURT OF APPEALS FOR CLARK COUNTY, OHIO

TINA M. JENKINS                           :

     Plaintiff-Appellee               :              C.A. CASE NO.    2011 CA 86

v.                                        :              T.C. NO.    06DR555

LYLE R. JENKINS                           :              (Civil appeal from Common
                                    Pleas Court, Domestic Relations)

     Defendant-Appellant              :

                                          :

          . . . . . . . . . .

# **O P I N I O N**

Rendered on the    14th    day of    September   , 2012.

. . . . . . . . . .

JON PAUL RION, Atty. Reg. No. 0067020 and NICOLE RUTTER-HIRTH, Atty. Reg. No. 0081004, 130 W. Second Street, Suite 2150, P. O. Box 1262, Dayton, Ohio 45402
        Attorneys for Plaintiff-Appellee

WILFRED L. POTTER, Atty. Reg. No. 0029121, 234 N. Limestone Street, Springfield, Ohio 45503
        Attorney for Defendant-Appellant

. . . . . . . . . .

DONOVAN, J.

    **{¶ 1}**    Defendant-appellant Lyle R. Jenkins appeals a judgment of the Clark County

Court of Common Pleas, Domestic Relations Division, which adopted a magistrate's decision finding him in civil contempt for violating a court order and awarding plaintiff-appellee Tina M. Jenkins the right to claim their two children for tax exemption purposes from 2010 through 2018. The magistrate's decision was filed on May 13, 2011. On May 26, 2011, Lyle filed objections to the magistrate's decision. The trial court overruled Lyle's objections and adopted the magistrate's decision in a judgment entry filed on October 18, 2011. Lyle filed a timely notice of appeal with this Court on November 10, 2011.

{¶ 2} Lyle and Tina were married in February of 2003 in Springfield, Ohio. The couple produced two children who were born just prior to the parties' marriage. The parties' decree of divorce was filed on November 27, 2007. In the divorce decree, Lyle was awarded primary custody and legal guardianship of the couple's minor children, and Tina was ordered to child support for both children. To say that the parties' relationship has been contentious since their divorce would be a gross understatement. A review of the record indicates that both Lyle and Tina have repeatedly been held in contempt of court for their respective failures to abide by court orders regarding the custody and care of their minor children, as well as certain financial matters. As noted by a magistrate in an earlier contempt proceeding, "the parties hate each other."

{¶ 3} At issue in the instant appeal is a provision of an Agreed Order executed by the parties on October 22, 2009, allowing Tina to claim both children for tax exemptions each year if Lyle has not earned sufficient taxable income during the calendar year exceeding his personal exemption and standard deduction for tax purposes. The record establishes that

in 2009, Lyle reported income of only $4,500.00, yet he claimed both children for exemptions on his tax return. Lyle does not dispute that he did not report a sufficient amount of income in order to claim the children on his return. We note that the Internal Revenue Service (IRS) disallowed his attempt to claim the children in 2009.

{¶ 4} Pursuant to her rights under the Agreed Entry, Tina filed her own tax return for 2009, in which she claimed both children. The IRS, however, informed her that the children had already been claimed, and that she owed money on her 2009 tax return. As a result, Tina filed a motion requesting that Lyle be held in contempt for claiming the children on his 2009 taxes.

{¶ 5} Additionally, Tina adduced evidence at the contempt hearing that on February 8, 2010, Lyle signed two IRS 8332 forms presented to him by Tina during a visitation exchange. The documents purported to allow Tina to claim both children for tax purposes from 2010 through 2018. Tina testified that both forms were completely filled out when Lyle signed them, and he was aware of the rights he was relinquishing. Lyle argued that the forms were blank when he signed them, and he only agreed that Tina could claim the children for the 2010 tax year. Lyle asserted that he signed the blank forms during the visitation exchange only because he was preoccupied with his children at the time and simply wanted to leave. Tina testified that Lyle stated that he would sign the forms if she agreed to dismiss the pending contempt proceedings against him. Tina testified that she did not agree to his request, but he, nevertheless, filled out his name and social security number on each completed form.

{¶ 6} The magistrate found Lyle's testimony not credible, and recommended that

he be held in contempt for claiming both children in 2009, fined him $250.00, and ordered him to pay court costs and $200.00 of Tina's attorney fees. The magistrate, as part of the contempt sancetion, awarded Tina the right to claim both children for tax exemptions from 2010 though 2018. Lyle filed objections to the magistrate's decision. The trial court subsequently overruled Lyle's objections and adopted the decision of the magistrate.

**{¶ 7}** It is from this judgment that Lyle now appeals.

**{¶ 8}** Lyle's first assignment of error is as follows:

**{¶ 9}** "THE DECISION OF THE TRIAL COURT WAS AN ABUSE OF DISCRETION AND AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE TO PUNISH APPELLANT AS IN CRIMINAL CONTEMPT INSTEAD OF CIVIL CONTEMPT."

**{¶ 10}** In his first assignment, Lyle contends that the trial court erred when it found him in indirect civil contempt. Specifically, Lyle argues that although he attempted to claim both children on his 2009 tax return, he was ultimately unsuccessful because the IRS disallowed his attempt to use the deductions, and Tina, therefore, still has the deductions available to her. Lyle asserts that because he was unsuccessful in his attempt to claim the children, he did not violate the express language in the Agreed Entry that the parties executed on October 22, 2009. Lyle also argues that the trial court erred by treating the matter as criminal contempt action rather than an action in civil contempt when it imposed a fine and ordered him to pay a portion of Tina's attorney fees.

**{¶ 11}** In *State v. Chavez-Juarez*, 185 Ohio App.3d 189, 2009-Ohio-6130, 923 N.E.2d 670 (2d Dist.), we recently discussed the concept of civil and criminal contempt:

Contempt is defined in general terms as disobedience

> of a court order.   It is conduct which brings the administration
> of justice into disrespect, or which tends to embarrass, impede
> or obstruct a court in the performance of its functions. * * *
> Contempt proceedings are often classified as sui generis,
> neither civil nor criminal. * * * However, most courts distinguish
> between civil and criminal contempt proceedings.
> The distinction is usually based on the purpose to be
> served by the sanction. * * *   Thus, in determining whether
> a contempt is civil or criminal, the pertinent test is "what
> does the court primarily seek to accomplish by imposing
> sentence?" * * *Civil contempt sanctions are designed for
> remedial or coercive purposes and are often employed to compel
> obedience to a court order. * * * Criminal contempt sanctions,
> however, are punitive in nature and are designed to
> vindicate the authority of the court. * * *   Thus,
> civil contempts are characterized as violations against
> the party for whose benefit the order was made, whereas
> criminal contempts are most often described as offenses
> against the dignity or process of the court. Id., at ¶s 24-25,
> citing *State ex rel. Corn v. Russo*, 90 Ohio St.3d 551,
> 554-555, 2001-Ohio-15, 740 N.E.2d 265.

**{¶ 12}** "A prima facie case of civil contempt is made when the moving party proves both the existence of a court order and the nonmoving party's noncompliance with the terms of that order." *Wolf v. Wolf*, 1st Dist. Hamilton No. C-090587, 2010-Ohio-2762, ¶ 4. "Clear and convincing evidence is the standard of proof in civil contempt proceedings." *Flowers v. Flowers*, 10th Dist. Franklin No. 10AP-1176, 2011-Ohio-5972, ¶ 13. We review the trial court's decision whether to find a party in contempt under an abuse-of-discretion standard. *Wolf* at ¶4.

**{¶ 13}** As the Supreme Court of Ohio has determined:

"Abuse of discretion" has been defined as an attitude that is unreasonable, arbitrary or unconscionable. (Internal citation omitted). It is to be expected that most instances of abuse of discretion will result in decisions that are simply unreasonable, rather than decisions that are unconscionable or arbitrary.

A decision is unreasonable if there is no sound reasoning process that would support that decision. It is not enough that the reviewing court, were it deciding the issue *de novo*, would not have found that reasoning process to be persuasive, perhaps in view of countervailing reasoning processes that would support a contrary result. *AAAA Enterprises, Inc. v. River Place Community Redevelopment*, 50 Ohio St.3d 157, 161, 553 N.E.2d 597 (1990).

**{¶ 14}** In the instant case, Lyle does not dispute that he attempted to claim both children as exemptions on his 2009 tax return even though he had not earned sufficient income to allow such use by the terms of the Agreed Entry. Lyle testified that his conduct

was not intentional. Rather, Lyle asserts that he simply misunderstood the provision of the Agreed Entry to allow him to claim the children if he earned *some* income during the year. Moreover, Lyle points out that the IRS did not allow him to claim the children for the year of 2009. Thus, Tina was not harmed because she can still claim the children as an exemption on her 2009 tax return. Simply put, Lyle defends his actions by arguing "no harm, no foul."

{¶ 15} Initially, we note that the Agreed Entry permitted him to claim the children only if he earned sufficient income in order to do so. Lyle acknowledges that the amount of income that he earned in 2009 was insufficient for him to benefit from a tax exemption. Lyle testified that he did not even receive a tax return in 2009 because of his low income. Despite this, he still claimed both children which prevented Tina from rightfully claiming the children herself. Clearly, Lyle violated the court order, and his actions in that regard were to the detriment of Tina. It is irrelevant that Lyle did not benefit from his contemptuous behavior. Tina had only to prove the existence of a court order and Lyle's noncompliance with the order. Tina met her burden, and the trial court correctly found Lyle in contempt. Thus, the trial court did not abuse its discretion when it adopted the magistrate's decision finding Lyle in contempt.

{¶ 16} We also note that the trial court did not err when it characterized Lyle's conduct as civil contempt rather than criminal contempt. "To determine whether [a] proceeding involved criminal or civil contempt, we look at the character and purpose of the penalties imposed. Punishment for civil contempt is 'remedial or coercive and for the benefit of the complainant.' *Brown v. Executive 200, Inc.*, 64 Ohio St.2d 250, 253, 416 N.E.2d 610 (1980). On the other hand, imprisonment for criminal contempt operates as

'punishment for the completed act of disobedience, and to vindicate the authority of the law and the court.' Id. at 254. Civil contempt punishments are conditional in that the contemnor can avoid the punishment by doing what [is] ordered. Thus, the contemnor is coerced into complying with the court's order. However, criminal contempt sanctions are typically definite and unconditional, and the contemnor is punished for the punitive purposes of the court rather than for the benefit of the complainant. Id." *Carter v. Carter*, 2d Dist. Montgomery Nos. 14409, 14530, 14574, 1994 WL 660811 (Nov. 23, 1994); see *Shapiro v. Shapiro*, 2d Dist. Miami No. 94-CA-2, 1994 WL645970 (Nov. 18, 1994).

{¶ 17} Upon review, we conclude that the sanctions imposed fall under the category of civil contempt rather than criminal contempt. We note that Lyle failed to object to the magistrate's decision to find him in civil, rather than criminal, contempt. As a result, he has waived that argument for the purposes of appeal. Nevertheless, Tina argues that the sanctions for contempt were civil in nature, because they were designed to coerce Lyle to comply with the Agreed Entry. We agree. The sanctions were designed to serve a remedial purpose and employed to compel Lyle's obedience to the Agreed Entry. Lyle's conduct can be characterized as a violation against the party for whose benefit the order was made: to wit, violating the express terms of the Agreed Entry to Tina's detriment. Essentially, Lyle's acts closely resemble a breach of contract for which the remedies are civil in nature. Accordingly, the trial court did not err when it found Lyle to be in indirect civil contempt.

{¶ 18} Further, we conclude that the trial court's decision finding Lyle in contempt was not against the manifest weight of the evidence. "A challenge to the manifest weight of

the evidence differs from a challenge to the sufficiency of the evidence." *State v. McKnight*, 107 Ohio St.3d 101,112, 2005-Ohio-6046, 837 N.E.2d 315. The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction. Id.

{¶ 19} The credibility of the witnesses and the weight to be given to their testimony are matters for the trier of facts to resolve. *State v. DeHass*, 10 Ohio St.2d 230, 231, 227 N.E.2d 212 (1967). "Because the factfinder * * * has the opportunity to see and hear the witnesses, the cautious exercise of the discretionary power of a court of appeals to find that a judgment is against the manifest weight of the evidence requires that substantial deference be extended to the factfinder's determinations of credibility. The decision whether, and to what extent, to credit the testimony of particular witnesses is within the peculiar competence of the factfinder, who has seen and heard the witness." *State v. Lawson* , 2d Dist. Montgomery No. 16288, 1997 WL 476684 (Aug. 22, 1997).

{¶ 20} Lyle's contempt finding is clearly not against the manifest weight of the evidence. The credibility of the witnesses and the weight to be given their testimony were matters for the court to resolve. Although Lyle testified at trial on his own behalf, his defense consisted of an allegation that he was simply mistaken and did not intend to violate the Agreed Entry which restricted his ability to claim his children as tax exemptions only

during years when he earned sufficient income. The trial court did not lose its way simply because it chose to believe the testimony of Tina, who testified at length regarding Lyle's failure to abide by the Agreed Entry. Having reviewed the entire record, we cannot clearly find that the evidence weighs heavily against a finding of contempt, or that a manifest miscarriage of justice has occurred.

{¶ 21} Lyle's first assignment of error is overruled.

{¶ 22} Because it is dispositive to his appeal, Lyle's third assignment of error will be discussed next as follows:

{¶ 23} "THE DECISION OF THE TRIAL COURT WAS AN ABUSE OF DISCRETION, AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AND A VIOLATION OF DUE PROCESS FOR LACK OF ADEQUATE NOTICE."

{¶ 24} In his final assignment, Lyle contends that the trial court erred when it awarded Tina the tax exemptions for both children from 2010 through 2018 in addition to the sanctions previously imposed upon the civil contempt finding. The trial court also held that a reallocation of the tax exemptions was proper after having found Lyle in contempt for violating the Agreed Entry.

{¶ 25} Initially, we note that the magistrate based her civil contempt finding on the fact the Lyle ignored the plain language of the Agreed Entry and claimed both children as tax exemptions in 2009 when he was expressly forbidden to do so. In the magistrate's conclusions of law, the contempt finding also incorrectly encompassed a modification of the Agreed Entry which reallocated the tax exemptions in 2010 through 2018. Contrary to the assertion made by Tina in her appellate brief, Lyle specifically objected to the portion of the

magistrate's decision wherein Tina received the tax exemption privilege for 2010 through 2018 because there was no motion before the court requesting such relief. Simply put, the tax documents and the issue of modification of the Agreed Entry were not properly before the court and the magistrate erred by considering them. Lyle was not provided any notice that Tina was asking for a modification of the Agreed Entry. The record establishes that Tina's show cause motion only requested that Lyle be held in contempt for improperly claiming the children in 2009 in direct violation of the Agreed Entry. The show cause motion contained no mention of Tina's intention to request a modification of the Agreed Entry for 2010 through 2018, and it was error for the magistrate to modify the Agreed Entry without a proper motion pursuant to Civ. R. 75(J) before her and without proper notice to Lyle pursuant to R.C. 3119.82. Accordingly, it was error for the trial court to adopt the decision of the magistrate in that regard.

**{¶ 26}** Lyle's third assignment of error is sustained.

**{¶ 27}** Lyle's second assignment of error is as follows:

**{¶ 28}** "THE DECISION OF THE TRIAL COURT WAS AN ABUSE OF DISCRETION AND AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AND DOUBLE JEOPARDY TO FURTHER PUNISH APPELLANT BY GRANTING APPELLEE THE TAX DEDUCTIONS UNTIL 2018."

**{¶ 29}** In his second assignment, Lyle argues that the trial court's decision giving Tina the right to claim her children as tax exemptions from 2010 through 2018 constitutes a second punishment for the same conduct for which he was punished when he was held in contempt and ordered to pay a fine, court costs, and a portion of Tina's attorney fees.

**{¶ 30}** In light of our disposition with respect to Lyle's third assignment, his second assignment of error is rendered moot.

**{¶ 31}** Lyle's first assignment of error having been overruled and his third assignment having been sustained, the judgment of the trial court is affirmed in part and reversed in part.

. . . . . . . . . . . . .

GRADY, P.J., concurs.

HALL, J., concurring:

**{¶ 32}** I agree with the well reasoned opinion authored by Judge Donovan and concur in its holding. The defendant was properly found in contempt of court for claiming both children as exemptions for the 2009 tax year. I also agree that absent an agreement of the parties, confirmed by the trial court, or a motion directed to the issue, the trial court could not modify allocation of the tax exemptions for the children.

**{¶ 33}** I write only to observe that the magistrate made a finding, which the court adopted, that the defendant admitted he signed the IRS 8332 forms (release of claim to exemption) to allow the mother to claim both children. And further, that the forms were completed to release the exemptions for tax years from 2010 through 2018. Lyle Jenkins' testimony to the contrary was found not credible. Therefore, even though the court order could not be changed without a proper motion, the IRS 8332 forms allow the mother to claim the children for future years unless and until the 8332 releases are revoked in a manner recognized by the IRS.

. . . . . . . . . .

Copies mailed to:

Jon Paul Rion
Nicole Rutter-Hirth
Wilfred L. Potter
Hon. Thomas J. Capper